IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FRANCESCO JOSEPH TROMBETTA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security Administration,<br><br>Defendant. | Civil No. 25-00143 MWJS-WRP<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

**INTRODUCTION**

In this appeal of a partial denial of Social Security disability benefits, Plaintiff Francesco Joseph Trombetta raises two contentions: first, that the Administrative Law Judge ("ALJ") improperly discounted Trombetta's statements about the severity of his symptoms; and second, that the ALJ failed to properly evaluate opinion evidence.

The court is not fully persuaded by the first of Trombetta's contentions. But because it partially agrees with the second, the court REVERSES the ALJ's partial denial and REMANDS that aspect of the case for further administrative proceedings.

**BACKGROUND**

Trombetta applied for Social Security disability and disability insurance benefits and claimed that his disability began on October 1, 2019. Dkt. No. 7-1, at PageID.43

(Administrative Record (AR) at 21).  After a hearing on June 5, 2024, *id.* at PageID.66 (AR at 44), the ALJ issued a written opinion with some good news and some bad news for Trombetta.

The good news was that the ALJ was granting Trombetta's applications beginning from the onset date of January 1, 2023.  *Id.* at PageID.11 (AR at 33).  The ALJ determined that Trombetta suffered from a number of severe impairments: "depression; bipolar disorder; generalized anxiety disorder; stimulant use disorder, in remission; degenerative joint disease of the left shoulder; left rotator cuff repair, with subacromial decompression and superior labral repair with distal clavicle resection; degenerative joint disease of the right knee, status-post right meniscectomy."  *Id.* at PageID.46 (AR at 24).  These impairments, the ALJ concluded, rendered Trombetta disabled beginning on January 1, 2023.  And while a claimant is ineligible for disability benefits if "drug addiction" would be a "contributing factor material" to a disability determination, *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting 42 U.S.C. § 423 (d)(2)(C)), the ALJ specifically found that Trombetta was not rendered ineligible for disability benefits—at least as of January 1, 2023—as a result of his past use of a controlled substance.  *Id.* at PageID.12 (AR at 34).

The bad news was that the ALJ concluded Trombetta was *not* disabled in the period between October 1, 2019, and January 1, 2023, and therefore denied his applications to that extent.  In reaching this conclusion, the ALJ assessed Trombetta's

2

residual functional capacity, or "RFC," which is a measure of "the most one can still do despite one's limitations." *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024) (cleaned up); *see* Dkt. No. 7-1, at PageID.48-53 (AR at 26-31) (assessing RFC). The ALJ considered Trombetta's physical and mental limitations in turn. Concerning his mental limitations, the ALJ concluded that "the overall record" supported Trombetta's ability to do "light" work with certain restrictions prior to January 1, 2023. Dkt. No. 7-1, at PageID.50 (AR at 28). The ALJ focused on two different time periods: times when Trombetta was suffering from "substance abuse" and was "not committed to remaining sober," *id.*, and times when Trombetta was "committed to treatment," *id.* at PageID.51 (AR at 29). As to the former, the ALJ concluded that "even when not committed to remaining sober," Trombetta "demonstrated the ability to perform simple tasks at his own pace and have some interaction with others." *Id.* at PageID.50 (AR at 28). In support of that conclusion, the ALJ pointed to the fact that "[i]n August 2020," Trombetta had reported during a doctor's visit that "he had been 'cutting trees for a living' albeit having sustained multiple abrasions that had become infected." *Id.* (quoting Exhibit 2F/195).

As to the time periods when Trombetta was "committed to treatment," the ALJ concluded that he "demonstrated stable, manageable symptoms that [were] consistent with" the RFC of "light" work. *Id.* at PageID.51 (AR at 29). To substantiate that conclusion, the ALJ cited medical evidence in the record—in particular, physical

3

examination notes from October 2020, June 2021, September 2022, and March 2023, in which doctors observed that Trombetta was "doing well" with stable anxiety and depression, had been successful at having limited social interactions, and had been taking his medications.  *Id.* at PageID.50-51 (AR at 28-29).  The ALJ found that "[t]he evidence and the overall record indicate fewer limitations than alleged as to cognitive and social functioning abilities."  *Id.* at PageID.51 (AR at 29).  For that reason, the ALJ concluded that up until January 1, 2023, "the evidence and the overall record is consistent with the ability to perform simple tasks not performed at production-rate pace and with occasional interaction with others"—that is, "light" work with certain tailored restrictions.  *Id.*

The ALJ acknowledged that three medical opinions had offered support to Trombetta's applications, but concluded they did not support an earlier onset date than January 1, 2023.  First, the ALJ noted that Mavis Alalmalo, Psy.D., "indicated that the claimant was incapable of engaging in competitive work, including a limitation of being unable to function 50% of the time."  *Id.*  The ALJ found that this stated limitation was "extreme," and that it was "not well supported with reference to findings or consistent with the overall record."  *Id.*  Instead, in the ALJ's view, "[t]reatment notes prior to the established onset date indicates the claimant engaged in robust physical work, willingness to live in a group setting, to attending counseling and meetings, and socializing."  *Id.*  The ALJ also noted that Dr. Alalmalo "expressly stated that his

4

opinion regarding limitations was valid for approximately four months, indicating that these restrictions were temporary." *Id.* For all of these reasons, the ALJ concluded that Dr. Alalmalo's "opinion is not persuasive prior to the established onset date" of January 1, 2023. *Id.*

Second, the ALJ recognized that TyQuitta Perrier, A.P.R.N., had "indicated that the claimant was incapable of engaging in competitive work." *Id.* But the ALJ observed that "Dr. Perrier's opinions were completed after the established onset date, and Dr. Perrier did not opine as to an onset date for the degree of limitation opined." *Id.* The ALJ also found that Dr. Perrier's "opinions are not well supported with reference to examination findings" and "are inconsistent with the overall record, which shows the claimant regularly performing simple tasks and interacting appropriately with others." *Id.* at PageID.52 (AR at 30). Here again, the ALJ noted that "[t]reatment notes prior to the established onset date indicate the claimant engaged in robust physical work, willingness to live in a group setting, to attending counseling and meetings, and socializing." *Id.* "For these reasons," the ALJ found that "Dr. Perrier's opinions are not persuasive." *Id.*

Finally, the ALJ considered the observations made by Gregg Lippert. Although Mr. Lippert "indicated poor symptom control, including difficulty leaving his room," the ALJ concluded that "the overall record is not consistent with Mr. Lippert's observations." *Id.* Once again, the ALJ asserted that "[t]reatment notes prior to the

5

established onset date indicate the claimant engaged in robust physical work, willingness to live in a group setting, to attending counseling and meetings, and socializing." *Id.*

Having rejected the above medical opinions, the ALJ found that prior to January 1, 2023, Trombetta had the RFC to "perform light work" with a number of limitations and accommodations. *Id.* at PageID.48 (AR at 26). And the ALJ concluded that while Trombetta could no longer perform any work that he had previously performed, the ALJ concluded that Trombetta could perform the jobs of price marker, mail sorter, and office helper, each of which jobs exist in significant numbers in the national economy. *Id.* at PageID.55 (AR at 33).

Trombetta sought further review of the ALJ's decision from the Appeals Council, which denied his request for review, *id.* at PageID.23 (AR at 1), making the ALJ's decision the Commissioner's final decision. Trombetta then brought this timely appeal.

## **STANDARD OF REVIEW**

The Commissioner's disability determination must be affirmed unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). This standard is deferential, requiring "only

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).

But the court may only defer to those reasons the Commissioner—here, acting through an ALJ—actually offers. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). That means a district court cannot affirm the Commissioner based merely on "what it assume[s] the ALJ to have determined." *Id.* at 1226.

## **DISCUSSION**

Trombetta argues that the ALJ erred in two distinct ways: first, by not adequately explaining why she discounted Trombetta's own statements about the severity of the symptoms from his mental health impairments; and second, by failing to provide sufficient reasons for her rejection of the opinions of the medical providers. The court considers each assigned error in turn.

### A.   Trombetta's Symptom Statements

Trombetta made statements about the severity of the symptoms from his physical and mental impairments which, if credited, would establish his disability. The ALJ indeed credited Trombetta's statements for the time period beginning on January 1, 2023. Dkt. No. 7-1, at PageID.53 (AR at 31). But the ALJ concluded that Trombetta's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to January 1, 2023." *Id.* at PageID.27 (AR at 59). Trombetta now argues that in reaching that latter conclusion, the ALJ erred. He focuses, in particular, on the ALJ's rejection of symptom statements concerning mental health impairments. *See* Dkt. No. 14, at PageID.2249 n.1 (Opening Brief) (explaining that although Trombetta does not agree with the ALJ's assessment of his physical restrictions, "this brief will focus on his mental health").

Although the issue is close, the court concludes that the Commissioner has the better of this argument. Critical to the court's conclusion is the fact that, in assessing Trombetta's symptom statements, the ALJ distinguished between two different phases or periods: those in which Trombetta was using controlled substances and "not committed to remaining sober," Dkt. No. 7-1, at PageID.50 (AR at 28), and those in which Trombetta was "committed to treatment," *id.* at PageID.51 (AR at 29). The ALJ did not adequately explain her reasons for discounting the former, but did offer sufficient reasons to account for her discounting of the latter.

As to the former, the ALJ found that "even when not committed to remaining sober, the claimant demonstrated the ability to perform simple tasks at his own pace and have some interaction with others." *Id.* at PageID.50 (AR at 28). In reaching this conclusion, the ALJ relied heavily—indeed, so far as can be discerned, relied entirely—on the fact that "[i]n August 2020, the claimant reported" to a physician "that he had

8

been 'cutting trees for a living' albeit having sustained multiple abrasions that had become infected." *Id.* at PageID.50 (AR at 28). That was not an adequate basis for rejecting Trombetta's symptom testimony. The record does not provide any detail about Trombetta's self-disclosed tree cutting. It does not show whether he did this on one occasion or multiple occasions; whether he worked with others or entirely on his own; whether the trees were large or small; whether he was asked merely to cut a few branches or whether he was asked to do something more substantial; and whether his work spanned a matter of minutes each time (assuming there was more than one time) or whether it required a more sustained effort than that. The only document providing any detail about tree cutting—Exhibit No. 2F—fails to answer any of these questions. *See* Dkt. No 7-1, at PageID.630. And while Trombetta testified at a hearing before the ALJ and answered all of her questions, the ALJ declined to ask any questions about tree cutting, despite the ALJ's "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

      The reference in Exhibit No. 2F to tree cutting, in short, is insufficiently detailed or developed to support the conclusion that it contradicts Trombetta's statements about the severity of his mental health symptoms. *Accord Auapaau v. O'Malley*, Civ. No. 24-00176, 2024 WL 4301378, at *4 (D. Haw. Sept. 26, 2024) (concluding that the ALJ erred in relying on a claimant's operation of a "tent rental business" to deny benefits because the

9

record was not sufficiently developed to support the conclusion that his work contradicted his symptom testimony). So the ALJ did not adequately explain her discounting of Trombetta's symptom statements as they relate to periods in which he was using a controlled substance.

That error does not warrant reversal, however, because an applicant is not eligible for benefits if "drug addiction" would be a "contributing factor material" to a disability determination. *Parra*, 481 F.3d at 746 (quoting 42 U.S.C. § 423 (d)(2)(C)). Put differently, the dispositive question is not whether Trombetta would qualify as disabled during the time periods when he was using a controlled substance, but rather whether he qualified as disabled in those time period when he was not.

The ALJ carved out that time period of sobriety. And in considering that critical time period, the ALJ did not rely on Trombetta's tree cutting. Instead, the ALJ relied on medical evidence in the record—in particular, physical examination notes from October 2020, June 2021, September 2022, and March 2023, detailing doctors' observations that Trombetta was "doing well" with stable anxiety and depression, that he was having success with limited social interactions, and that he had been taking his medications as prescribed. Dkt. No. 7-1, at PageID.50-51 (AR at 28-29). Trombetta makes a spirited argument to the effect that the ALJ merely "cherry-pick[ed]" moments when Trombetta "was having a period of stability to justify the adverse credibility finding." Dkt. No. 14, at PageID.2260. But the better reading of the ALJ's decision is that she sought to draw

10

from doctors' observations of time periods when Trombetta was not using a controlled substance, and did not rely on moments when Trombetta took a turn for worse and sought help with "manag[ing] his . . . substance use difficulties."  *Id.* at PageID.2258.  One might debate whether the ALJ drew these distinctions persuasively, and it is certainly possible this court might not have reached the same conclusion as the ALJ in reviewing these same medical records.  But the court's review is limited and deferential: "if evidence exists to support more than one rational interpretation," the court "must defer to the [ALJ's] decision."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 & n.1 (9th Cir. 2004).  Ultimately, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008).

For these reasons, the court concludes that the ALJ did not commit reversible error in her assessment of Trombetta's symptom statements.

### B.   The Medical Opinions

Trombetta's next contention is that the ALJ did not adequately explain her reasons for rejecting the medical opinions that were favorable to him.  Here, the court concludes that Trombetta has the better of the argument.

1.  When, as here, applications for disability benefits are filed after March 27, 2017, current Social Security Administration regulations require an ALJ to consider, among other things, the "supportability" and the "consistency" of medical opinions in

the administrative record before deciding whether they are persuasive. *Wade v. O'Malley*, Civil No. 23-00350, 2024 WL 3248021, at *3 (Feb. 16, 2024) (cleaned up). "Supportability" is "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id.* at *4 (cleaned up). It is a question of how well a medical opinion supports itself. "Consistency," by contrast, focuses "whether the medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (cleaned up). That assessment asks how well a medical opinion is supported by other evidence in the administrative record.

Given the importance of the supportability and consistency factors, it is not enough for ALJs to merely assert that medical opinions lack supportability or consistency; they must *explain* how they considered these factors, and their explanations must be supported by substantial evidence. *Id.*; *see also Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) ("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'").

The ALJ did not adequately assess either the supportability or the consistency factors in this case. In considering the supportability of the opinions of Dr. Alalmalo, the ALJ merely asserted that the opinions were "not well supported with reference to findings." Dkt. No. 7-1, at PageID.51 (AR at 29). Similarly, the ALJ merely asserted that

12

Dr. Perrier's opinions were "not well supported with reference to examinations findings." *Id.* at PageID.52 (AR at 30). And as to Mr. Lippert, the ALJ did not even make that cursory assertion of a lack of support. *Id.* A mere assertion that opinions are not well supported—and certainly a failure to say even that much—is insufficient to satisfy an ALJ's obligation to explain how she has analyzed the supportability of a medical opinion.

The ALJ's consistency analysis is also insufficient. The principal problem here is that in rejecting each of the medical experts' opinions, the ALJ largely relied on the assertion that the "overall record" shows that Trombetta "engaged in robust physical work." *Id.* at PageID.52 (AR at 30). The only evident support for that assertion is Trombetta's self-disclosed work cutting trees. But for the reasons discussed earlier, *see supra* pp. 9-10, the record is not sufficiently developed to support the conclusion that Trombetta's tree cutting qualified as any meaningful amount of "robust physical work." Nor does the record contain any adequate basis for concluding that the tree cutting efforts were inconsistent with the medical opinions. And the ALJ made no effort to explain why she concluded otherwise. This was not enough to satisfy the ALJ's obligation to engage with the consistency factor.

In finding the medical opinions inconsistent with the overall record, the ALJ also alluded to Trombetta's supposed "willingness to live in a group setting, to attending counseling and meetings, and socializing." *Id.* The problem with relying on these facts

13

to discredit the medical opinions is that the ALJ identified no reason to conclude that Trombetta stopped doing these same things after January 1, 2023.  And yet the ALJ herself concluded that Trombetta is disabled after January 1, 2023.  If Trombetta's hopeful but modest efforts to address the worst effects of his impairments have not rendered him capable of performing full time work after January 1, 2023, it is unclear why they would do so for the time period before that date.  At the least, the ALJ did not offer any explanation why that would be so.  Because the ALJ did not adequately explain why Trombetta's positive efforts would be inconsistent with the medical opinions for the time period before January 1, 2023, while being consistent with those opinions for the time period after that date, the ALJ's reliance on those efforts was error.

2.  There remains the question of whether these errors were harmless, however. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (explaining that if an ALJ offers a reason for discrediting evidence that proves to be error, a court should still affirm if the ALJ provided "other record-supported reasons for discrediting" that same evidence).

As to Dr. Alalmalo and Dr. Perrier, the court concludes they were indeed harmless.  Although the ALJ did not adequately discuss the supportability or consistency factors for these experts' opinions, the court provided separate reasons why the opinions—even if credited—did not establish Trombetta's disability in the period prior to January 1, 2023.  First, the ALJ noted that Dr. Alalmalo "expressly stated that

14

his opinion regarding limitations was valid for approximately four months, indicating that these restrictions were temporary." Dkt. No. 7-1, at PageID.51 (AR at 29).  Second, the ALJ observed that "Dr. Perrier's opinions were completed after the established onset date, and Dr. Perrier did not opine as to an onset date for the degree of limitation opined." *Id.*  The point of these observations is that the opinions of Dr. Alalmalo and Dr. Perrier, even if they were accepted as persuasive, would not support Trombetta's request for disability benefits prior to January 1, 2023.  Given the ALJ's conclusion that these opinions would not establish Trombetta's disability in that earlier time period even if persuasive, the ALJ's failure to adequately explain why she concluded the opinions were unpersuasive was harmless error.  And while Trombetta contends that the ALJ should not have interpreted the medical opinions as being so limited, here again, the court must defer to the ALJ's resolution of ambiguities in the medical record.  *Tommasetti*, 533 F.3d at 1041-42.

No such time limitation applies to the opinion of Mr. Lippert—or, at a minimum, none is evident in the existing administrative record, and the ALJ pointed to none in her opinion.  Accordingly, while the ALJ's failure to adequately address the supportability and consistency factors is harmless error as to the opinions of Dr. Alalmalo and Dr. Perrier, the same cannot be same of the opinion of Mr. Lippert.  Because Mr. Lippert's opinion alone, if credited, could possibly establish that Trombetta was disabled in the time period between October 1, 2019, and January 1, 2023—at the least,

15

the Commissioner has not argued otherwise—the ALJ's error in handling Mr. Lippert's opinion requires reversal.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision partially denying Trombetta's applications for Social Security disability insurance benefits is REVERSED and the case is REMANDED for further administrative proceedings consistent with this order.

IT IS SO ORDERED.

DATED: October 23, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 25-00143 MWJS-WRP, *Francesco Joseph Trombetta v. Frank Bisignano*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

16